UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) DOCKET NO.: 1:19-CR-17 |
| | ) |
| v. | ) **FACTUAL BASIS** |
| | ) |
| JOSEPH F. WISEMAN, JR. | ) |
| | ) |

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. Buncombe County is a political subdivision of the State of North Carolina, and during each of the calendar years relevant to this case, from 2014 through 2017, it received benefits in excess of $10,000 pursuant to a Federal program involving a grant, contract, subsidy, loan guarantee, and other forms of Federal assistance.

2. The defendant JOSEPH F. WISEMAN, JR., is a registered Professional Engineer. From the mid-1980s through 2017, he was the agent and contractor on behalf of three businesses that obtained contracts with Buncombe County for consulting and engineering services.

3. CDM Smith, a global consulting, engineering, construction, and operations firm headquartered in Boston, Massachusetts, employed the defendant from the mid-1980s until late 2013. It became a Buncombe County contractor by the mid-1980s. From 2001 through 2017, Buncombe County entered into contracts with it for engineering and construction projects to

develop and maintain the Buncombe County Landfill, and the commissioning of new County buildings, among other projects, for which it paid CDM Smith approximately $13.3 million.

4. Petra Engineering PLLC (hereinafter "Petra") was a professional limited liability corporation headquartered in Huntersville, North Carolina. . After the defendant left CDM Smith in late 2013, he began working with Petra, at which time Buncombe County began entering into contracts with Petra. From in or about 2014 through 2016, while WISEMAN represented Petra, Buncombe County paid Petra approximately $260,000 pursuant to those contracts.

5. Environmental Infrastructure Consulting, LLC, (hereinafter "EIC") was registered on April 2, 2014, with the Georgia Secretary of State as a domestic limited liability company. The defendant was EIC's principal member and had full operational control over EIC. EIC was also registered with the North Carolina Secretary of State on June 4, 2014. Shortly after the defendant created EIC, Buncombe County established it as a vendor and began entering into contracts with it, making its first payment to EIC in May 2014. From May 2014 through February 2018, Buncombe County paid EIC approximately $1.9 million pursuant to those contracts.

6. Wanda Skillington Greene (hereinafter "Greene") was the County Manager of Buncombe County from 1997 until her retirement effective June 30, 2017. In her capacity as County Manager, Greene had the authority to approve the awarding of certain contracts between the County and private contractors, including contracts for engineering and consulting services.

7. Jon Eugene Creighton (hereinafter "Creighton") began working for Buncombe County in March 1982. In 1985, he became the Director of the County's Department of Planning and Development. In his capacity as the Planning Director, Creighton had the responsibility to negotiate contracts between the County and private contractors involving, among other things, construction, engineering, and consulting services. He was also the official who generally signed such contracts on behalf of the County. He remained the Director of that Department until he retired effective December 31, 2017. From 1997 until his retirement, he also had a dual appointment as Assistant County Manager.

8. Amanda Louise Stone, also known as Mandy Stone, (hereinafter "Stone") began working for Buncombe County in the 1980s. She became the Assistant Director of the Buncombe County Department of Social Services in 1994, and became the Director of that Department in 2001. Starting in 2005, Stone also had a dual appointment, along with Creighton, as Assistant County Manager. She remained the Director of the Department of Social Services, as well as Assistant County Manager, until she was named the County Manager upon Greene's retirement effective July 1, 2017. She retired from the County effective June 30, 2018

9. Beginning before 2014, some County personnel, including Greene, Creighton, and Stone, went on trips that were connected in some way with legitimate County business, but during which the Contractor provided such things of value as expensive meals, wine, tickets to sporting events and other excursions, and other things of value. By 2014, the defendant and the co-conspirator County employees conspired to execute a pattern and practice of soliciting and

2

accepting trips, valuable gifts, and other things of value from the defendant that were entirely unrelated to any legitimate County business.

10. Creighton and Greene had the authority to award or deny the contracts that EIC had with the County. They and the defendant understood and agreed that his providing these trips, gifts, and favors was a necessary condition to EIC's continuing to obtain contracts with the County. During the time period when EIC was providing trips and other things of value to those Buncombe County officials, the defendant was also negotiating with the County, usually through the Creighton, and was able to obtain contracts on behalf of EIC. These were lump-sum contracts, with the County agreeing to pay a particular sum to EIC regardless of any additional expenses that EIC might incur in performing the contract.

11. It was a part of the criminal scheme that the defendant provided Greene, Creighton, and Stone with gifts and other things of value, consisting primarily of expense-paid pleasure trips to such locations as Key West, Boston, Martha's Vineyard, Maine, Phoenix, San Diego, and the Napa Valley, and to such foreign locations as Vienna, Budapest, Cartagena, and Vancouver. Generally, EIC paid for the airplane tickets, hotel rooms, meals and beverages, ground transportation, sightseeing excursions, spa sessions, and gift shop purchases, such as cases of wine from the Napa Valley vineyards that the County officials visited.

12. To facilitate the charges to EIC's credit cards for such trips and gifts, the defendant provided Creighton, Greene, and Stone with his credit card numbers and, in the case of Creighton, with the card itself. The Creighton, Greene, and Stone then generally used those card numbers to make their airplane reservations for these pleasure trips. .

13. For those trips during which the defendant accompanied these County employees, he would generally charge the expenses to his card. For the trips during which he did not accompany the County employees, they used a copy of his card to pay for rooms, meals, beverages, gift store purchases, and other incidental expenses.

14. The defendant contends that the expenses he incurred by providing these trips, gifts, and other things of value came out of what otherwise would have been part of the profit he would have made as part of the lump-sum contracts, rather than from any type of "padding" or inflating the contract amount in order to pay for these expenses. The Government's investigation has thus far neither confirmed nor rebutted this contention as to whether the contracts themselves were inflated in such a way as to charge the County more in order to fund these illegal expenses.

15. Nonetheless, regardless of whether the County also incurred additional damages due to inflated contract costs, the fact remains that by agreeing to provide, and by providing, these surreptitious payments to the relevant County employees in order to influence those employees' decisions as to awarding contracts, the defendant conspired with Greene, Creighton, and Stone to deprive the Government and citizens of Buncombe County of their right to the honest services of those employees.

3

16. The value of the gifts and things of value that the defendant provided to those County employees exceeded $40,000.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

*[signature]*
Richard Lee Edwards
ASSISTANT UNITED STATES ATTORNEY

Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

*[signature]*      DATED: 02/05/19
Holly A. Pierson, Attorney for Defendant

*[signature]* (w/ permission)      DATED: 02/05/19
David Brown, Attorney for Defendant

4